UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| SUSAN R. SPICHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:16cv371 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §416(I). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield, supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since the alleged

onset date (20 CFR 404.1571 *et seq*, and 416.971 *et seq*.)

3. Since the alleged onset date of disability, August 1, 2003, the claimant has had the following severe impairments: osteoarthritis due to nonunion of a left femur fracture, status post removal of rod and insertion of larger rod, plus autologous bone grafting; degenerative disc disease; chronic obstructive pulmonary disease ("COPD"); fibromyalgia/chronic pain syndrome; and morbid obesity (20 CFR 404.1520(c) and 416.920(c)).

4. Since the alleged onset date of disability, August 1, 2003, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that since August 1, 2003, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: she can lift ten pounds occasionally and frequently; can stand and walk for at least two hours in an eight-hour workday, and requires a hand-held assistive device to walk for even short distances, but the contralateral upper extremity can be used to lift and carry; can sit for about six hours in an eight-hour workday; is limited in the use of her lower extremities, and cannot work with foot controls; can never climb ladders, ropes or scaffolds; can only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme cold and heat, wetness, and humidity; and, must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc., and to hazards such as slick, uneven surfaces and unprotected heights.

6. Since August 1, 2003, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. Prior to the established disability onset date, the claimant was a younger individual age 18-49. On September 20, 2012, the claimant's age category changed to an individual closely approaching advanced age (20 CFR 404.1563 and 416.963.

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 1564 and 416.964).

9. Although prior to September 20, 2012, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills, as of that date the rules change but any

3

skills acquired from past work do not transfer to other occupations (See SSR 92-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to September 20, 2012, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969a).

11. Beginning on September 20, 2012, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12. The claimant was not disabled prior to September 20, 2012, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

13. The claimant was not under a disability within the meaning of the Social Security Act at any time through December 31, 2008, the date last insured (20 CFR 404.315(a) and 404.320(b)).

(TR. 833-847).

On May 28, 2010, Plaintiff filed an application for DIB and SSI, asserting that she was disabled and had been so since August 1, 2003. On January 19, 2012, a hearing was held. On May 31, 2012, an ALJ entered a partially favorable decision. On July 13, 2012, Plaintiff challenged the ALJ's decision by timely filing a Request for Review of Hearing Decision/Order with the Appeals Council. On August 27, 2013, the Appeals Council, in its Notice of Appeals Council Action, denied Plaintiff's Request for Review. On October 18, 2013, Plaintiff timely filed a Complaint in this Court. On August 7, 2015, Judge Springmann of this Court entered an Opinion and Order, reversing and remanding the case for further proceedings.[1]

---

[1] *Spicher v. Colvin*, 1:13cv304 (N.D. Ind. 2015).

The Appeals Council then entered an order sending the case back to the same ALJ with instructions. On May 25, 2016, another hearing was held. On June 24, 2016, the ALJ entered another partially favorable decision, reaching a result that was substantially similar to one in the previously vacated decision. On October 21, 2016, Plaintiff timely filed her Complaint in the case at bar, appealing the June 24, 2016 decision.

Plaintiff filed her opening brief on April 13, 2017 and filed her medical summary on April 14, 2017. The defendant filed a brief in support of the Commissioner's decision on July 20, 2017. The Plaintiff has declined to file a reply.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

The Plaintiff's impairments mainly arise from injuries she suffered on June 3, 2004, as the result of a motor vehicle accident. After this accident, Plaintiff underwent the following

5

surgeries and procedures: open reduction and internal fixation of the left femur; multiple irrigations and debridements of the right femur; left intertrochanteric fracture; left acetabular fracture; open reduction and internal fixation of left hip; left hip wound infection; left superior pubic rami fracture; left inferior pubic rami fracture; right ankle open fracture and dislocation; open reduction and internal fixation of right ankle; multiple irrigations and debridements of right ankle; left thigh laceration; blunt thoracic injury; and blunt abdominal injury.

From June 25, 2004 through August 23, 2004, Goshen At Home Services provided hospice care to the Plaintiff that consisted of multiple skilled nursing and physical therapy visits.

On January 12, 2005, Plaintiff's left femoral shaft exhibited non-union. On January 18, 2005, Plaintiff underwent surgery to replace the intramedullary rod in the femur. On January 26, 2005, Plaintiff's orthopaedic physician conducted a post-surgery examination, continued her Vicodin prescription, and noted that Plaintiff ambulated with a walker.

Plaintiff's chronic leg pain continued, and on June 20 2007, a left femur radiograph revealed sclerosis of the margin of the bone consistent with non-union. A bone scan also confirmed the non-union and myosotis ossificans, a soft issue problem. Essentially, four years after the accident, Plaintiff's left femur still had not healed properly. Plaintiff underwent an additional surgery on August 28, 2007, which involved the removal of the intramedullary rod and the reinsertion of a larger rod with bone grating. On May 21, 2008, Plaintiff had increased pain with walking and her orthopaedic physician concluded that Plaintiff will likely need additional surgery with plating and bone grafting.

On July 12, 2008, Plaintiff broke her left elbow and underwent an open reduction and internal fixation of left humerus. By June 16, 2009, Plaintiff described the pain as occasionally

stabbing and noted that lifting increased the pain.  The orthopaedic physician diagnosed non-union of the distal humerus.

From 2003 through 2016, Plaintiff, who is 5'1", was morbidly obese.  Her weight fluctuated from 222 pounds to 327 pounds.

As noted, on August 7, 2015, this Court remanded the prior decision.  This court held that there is some evidence to support a closed period of disability, and ordered the ALJ to evaluate more thoroughly whether there is a closed period of disability at any time since the alleged onset date of August 1, 2003, especially between June 2007 to June 2009.  Also on remand, the ALJ was to evaluate whether the Plaintiff's obesity from the alleged onset date through May 30, 2012 further impacted the gravity of the Plaintiff's alleged disability.

In the present case, the Plaintiff again alleges that the ALJ improperly evaluated obesity.  The Plaintiff acknowledges that the ALJ procured a medical expert, Dr. Haynes, to testify at the hearing.  However, the Plaintiff alleges that the expert failed to offer any independent analysis or explanation of the relationship between obesity and its impact upon Plaintiff's other impairments.  Plaintiff argues that even with Dr. Haynes' opinion, there is not enough information for this court to make a meaningful review of the ALJ's decision.

The ALJ noted that Dr. Haynes confirmed that he had reviewed all of the medical evidence and Dr. Haynes testified that Dr. Strong's opinion that Plaintiff could perform sedentary work was well thought out.  Dr. Haynes acknowledged the presence of the non-healing leg fracture and obesity, and he testified that the evidence did not support an increase in physical limitations from the time of Dr. Strong's opinion. Dr. Haynes testified that after his careful review of the medical record, he did not think that Plaintiff met a Listing.  Dr. Haynes also

7

testified that he agreed with the capacity determined by the State Agency as defined in the Plaintiff's RFC. As the ALJ noted, Plaintiff's counsel did not cross-examine Dr. Haynes with respect to his opinion of the evidence. Plaintiff's attorney now argues that the fact that Dr. Haynes agrees with Dr. Strong adds nothing to the case, yet he does not state any basis on which Dr. Haynes could disagree with Dr. Strong. Nor did Plaintiff present her own expert on the issue.

This Court finds that the ALJ's analysis of the impact of Plaintiff's obesity is sufficient and provides substantial evidence to support the ALJ's decision. *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012); *Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008) The ALJ was requested to revisit the question of whether Plaintiff's obesity impacted her other impairments sufficiently to render her disabled prior to May 31, 2012. The ALJ did so, and even obtained the opinion of another medical expert, Dr. Haynes. This Court finds no error in the ALJ's evaluation of Plaintiff's obesity.

Plaintiff also claims that due process was not followed because, upon remand, the case was sent back to the same ALJ for a new hearing and a new decision. Plaintiff claims that the ALJ made a decision in this matter before taking testimony at the hearing. The record is clear that at the outset of Plaintiff's hearing on remand, the ALJ noted that she was not bound by her prior decision but that she would determine that Plaintiff was limited to sedentary work. As this is the lowest classification for exertional capabilities, it is not surprising that the ALJ would note at the outset that the classification to sedentary work would not be increased to light, or medium work. This simply shows the ALJ's knowledge of the case and does not show any bias. Moreover, as noted above, the ALJ called in a new medical expert, which shows that the ALJ was open to considering new evidence and was not simply rubber-stamping the prior decision.

There is nothing in the record that suggests to the Court that due process was violated in this case.

Lastly, Plaintiff argues that the RFC is illogical because it states that Plaintiff could occasionally balance, stoop, kneel, crouch, or crawl, and Plaintiff is obese and uses a cane to ambulate. However, there is no medical evidence that Plaintiff cannot occasionally do these things. While it may not be easy for an obese person with a bad leg to kneel or crawl, there is no evidence that it would be impossible. Additionally, the ALJ's decision noted that Plaintiff performed housework at home and also attended to her own activities of daily living, all of which supports the RFC.

Accordingly, for all the foregoing reasons, the deciaion of the ALJ will be affirmed.

<u>Conclusion</u>

On the basis of the foregoing, the ALJ's decision is hereby AFFIRMED.

Entered: September 22, 2017.

s/ William C. Lee
William C. Lee, Judge
United States District Court